# Exhibit A



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/116,689 | 04/27/2005 | Alexandre Grigorovitch | 309141.01 | 3327 |

22971          7590          10/24/2008
MICROSOFT CORPORATION
ONE MICROSOFT WAY
REDMOND, WA 98052-6399

| EXAMINER |
|---|
| RAHIM, MONJUR |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2434 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/24/2008 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

roks@microsoft.com
ntovar@microsoft.com

---

For the following analysis:

Original Risan patent language (trade secret at the time of Microsoft patent submission) is inside green boxes.

Corresponding Microsoft language is shown inside red boxes.

28 Patent Claim Components have been identified, each a Trade Secret.

---

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 11/116,689 | GRIGOROVITCH ET AL. |
| | Examiner | Art Unit | |
| | MONJOUR RAHIM | 2434 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>27 April 2005</u>.

2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☐ Claim(s) <u>1-20</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-20</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 11/116,689                                    Page 2
Art Unit: 2434

### DETAILED ACTION

1.    This action is responsive to: an original application filed on **27 April 2005**.

2.    **Claims 1-20** are currently pending and **claims 1, 9** and **14** are independent claims.

### Drawings

3.    The drawings filed on **27 April 2005** are accepted by the examiner.

### Claim Rejections - 35 USC § 102

4.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

**Claims 1-20** are rejected under U.S.C 102(e) as being anticipated by Risan et al (US Publication No. 2005/0172121 A1), hereinafter Risan.

In regard to **claim 1,** Risan discloses:

- **_a media source, including an input and an output, operating in a protected space, the input of the media source coupled to a media content_** Risan, Abstract, "The compliance mechanism comprises a framework for validating the compliance mechanism on the client system, and a multimedia component opened by the framework. The present method uses the multimedia component for decrypting the media content on the client system"), where "system" inherently have input and output, as claimed. TS-1

- **_a plurality of transform mechanisms, including an input and an output, operating in the protected space, the input of the plurality of transform mechanisms coupled to the output of the media source_** Risan, paragraph [0068] In the present embodiment, coder/decoder303 can also perform a periodic and repeated check of the media file, while the media file is passed to the media player application, (e.g., in a frame by frame basis or in a buffer by buffer basis), to ensure

Application/Control Number: 11/116,689                                           Page 3
Art Unit: 2434

that CCM 300 rules are being enforced at any particular moment during media playback. It is noted that differing coder/decoders303 can be utilized in conjunction with various types of copyrighted media content including, but not limited to, audio files, video files, graphical files, alphanumeric files and the like, such that any type of media content file can be protected in accordance with embodiments of the present invention"), where "decoding" is the transforming mechanism, as claimed. **TS-2**

- *a media sink, including an input and an output, operating in the protected space, the input of the media sink coupled to the output of the plurality of transform mechanisms* Risan, paragraph [0220], "FIG. 10 is a block diagram of a communicative environment 1000 for controlling unauthorized reproduction of protected media files disposed on a media storage device in accordance with an embodiment of the present invention. Included in communicative environment 1000 is a media storage device drive 1112 coupled with a client computer system 210 via a data/address bus 110"). **TS-3**

- *the media source, the plurality of transform mechanisms and the media sink forming a protected media pipeline, the protected media pipeline including an output and an input* (Risan, paragraph [0111], "Wave-out lines 542 and 566 are shown to diverge from wave-out line 540 at media device driver 505 into separate paths. Wave-out line 542 is coupled to wave shim driver 309 and wave-out line 566 is coupled to direct sound 504. When selectable switches 311 and 511 are open (shown), incoming media 499 cannot flow to recording application 502, thus preventing unauthorized recording of it"), and paragraph [0037], "FIG. 20 is a data flow block diagram showing an implementation of a copyright compliance mechanism for preventing unauthorized recording of media files on a Macintosh operating system, in accordance with one embodiment of the present invention"), where data flow is the pipeline, as claimed. **TS-4**

In regard to **claim 2**, claim 1 is incorporated and Risan discloses:

- *wherein one of the transform mechanisms of the plurality of transform mechanisms is a decoder* (Risan, paragraph [0067], "Still referring to FIG. 3, copyright compliance mechanism 300 further includes a coder /decoder 303'). **TS-5**

In regard to **claim 3**, claim 1 is incorporated and Risan discloses:

Application/Control Number: 11/116,689                                    Page 4
Art Unit: 2434

*- further comprising a plurality of protected media pipelines* (Risan, paragraph [0220],
"G. 10 is a block diagram of a communicative environment 1000 for controlling unauthorized
reproduction of protected media files disposed on a media storage device in accordance with an
embodiment of the present invention. Included in communicative environment 1000 is a media
storage device drive 1112 coupled with a client computer system 210 via a data/address bus
110"). **TS-6**

In regard to **claim 4,** claim 1 is incorporated and Risan discloses:

*- wherein two of the plurality of transform mechanisms forming a protected media
pipeline are coupled in series* (Risan, paragraph [0257], media player 1210 also includes a
watermarker 1212 for watermarking the outgoing data stream. In one embodiment, watermarker
1212 operates concurrent with secure media player 1210 and during player 1210 rendering of the
content. For example, watermarker 1212 can attach a serial number, e.g., serial number 1380 of
FIG. 13, associated with each media storage device 999 onto the outgoing data stream"), where
"rendering" data and sending it through to device 999, as claimed. **TS-7**

In regard to **claim 5,** claim 1 is incorporated and Risan discloses:

*- wherein two of the plurality of transform mechanisms forming a protected media
pipeline are coupled in parallel* ( Risan, paragraph [0046], "System 100 also includes one or
more signal generating and receiving devices (e.g., signal input/output device(s) 104 coupled to
bus 110 for enabling computer 100 to interface with other electronic devices. Communication …
In such an instance, communication interface 104 may include a DSL modem"), where
inherently it is parallel connection. **TS-8**

In regard to **claim 6,** claim 1 is incorporated and Risan discloses:

*- wherein the protected media pipeline processes digitized audio* (Risan, paragraph
[0053], "Further, it is noted that network 200 can operate with and deliver any type of media
content (e.g., audio, video, multimedia, graphics, information, data, software programs, etc.) in
any format. In one embodiment, content server 251 can provide audio and video files to client
computers 210-230 via Internet 201"). **TS-9**

Application/Control Number: 11/116,689                                    Page 5
Art Unit: 2434

In regard to **claim 7**, claim 1 is incorporated and Risan discloses:

*- wherein the protected media pipeline processes digitized video* (Risan, paragraph [0053], "Further, it is noted that network 200 can operate with and deliver any type of media content (e.g., audio, video, multimedia, graphics, information, data, software programs, etc.) in any format. In one embodiment, content server 251 can provide audio and video files to client computers 210-230 via Internet 201"). TS-10

In regard to **claim 8**, claim 1 is incorporated and Risan discloses:

*- wherein the protected media pipeline operating in the protected space provides resistance to unauthorized access to the media content* (Risan, paragraph [0083], "In one embodiment, CCM 300 also includes one or more custom media device driver(s) 307 for providing an even greater measure of control over the media stream while increasing compliance reliability. A client computer system (e.g., 210) can be configured to utilize a custom media device application (e.g., custom media device 310 of FIGS. 5B, 5C, and 5D) to control unauthorized recording of media content files"). TS-11

In regard to **claim 9** and Risan discloses:

*- a stub portion of a protected media source, including an input and an output, operating in a first space, the input of the stub portion of the protected media source coupled to a media content* Risan, paragraph [0101], "The newly retrieved portion of the media file is then presented by the client's media player application. While the newly retrieved portion is presented, CCM 300 again checks that the rules are enforced, and retrieves an additional portion of the media file or suspends presentation of the media file if the rules are not being enforced. These operations are performed repeatedly throughout the playback of the media file, in a loop environment, until the media file's contents have been-presented in their entirety. Advantageously, by constantly monitoring during playing of media files, CCM 300 can detect undesired activities and enforces those rules as defined by CCM 300"); TS-12

*- a proxy potion of the protected media source, including an input and an output, operating in a protected space, the input of the proxy portion of the protected media source*

Application/Control Number: 11/116,689                    Page 6
Art Unit: 2434

*coupled to the output of the stub portion of the protected media source* Risan, paragraph [0278], "In one embodiment, UCM 1200 can invoke its own proprietary player, (e.g., secure media player 1210), as described with reference to custom media device 310 of FIG. 3, thus enabling increased control of copyright restrictions and/or licensing agreements applicable to the media content. By invoking a secure media player 1210, UCM 1200 enables user experience of media content while providing protection against unauthorized presentation or reproduction of the media disposed on media storage device 999"). TS-13

In regard to *claim 10*, claim 9 is incorporated and Risan discloses:

*- wherein the first space is an application space comprising other unprotected elements of the system* Risan, paragraph [0087], "By virtue of non-encrypted media files utilizing less storage space and network resources than encrypted media files, networks having limited resources can utilize the functionalities of driver 307 of CCM 300 to provide compliance with copyright restrictions and/or licensing agreements applicable with a media content file without having the processing overhead of encrypted media files"), where non-encrypted media is the unprotected element, as claimed. TS-14

In regard to *claim 11*, claim 9 is incorporated and Risan discloses:

*- wherein the first space is a protected media space distinct from the protected space and distinct from an application space comprising other unprotected elements of the system* (Risan, paragraph [0101] If the rules in accordance with CCM 300 are enforced, the codec/decoder 303 retrieves a subsequent portion of the media content that is stored locally in client computer system 210. The newly retrieved portion of the media file is then presented by the client's media player application"). TS-15

In regard to *claim 12*, claim 9 is incorporated and Risan discloses:

*- wherein the protected media source provides resistance to unauthorized access to the media content being transferred between the stub portion of the media source operating in the first space and the proxy portion of the media source operating in the protected space* Risan, paragraph [0098], "Referring still to FIG. 4, it is further noted that, in one embodiment, the

Application/Control Number: 11/116,689                                   Page 7
Art Unit: 2434

media files and attached headers can be encrypted prior to being stored within content server 251. In one embodiment, the media files can be encrypted utilizing randomly generated keys. Alternatively … protecting the media files and the data being exchanged from unauthorized use or access"). TS-16

In regard to *claim 13*, claim 9 is incorporated and Risan discloses:

   *- wherein the output of the proxy portion of the protected media source is coupled to an input of a protected media pipeline operating in the protected space* (Risan, paragraph [0278], "In one embodiment, UCM 1200 can invoke its own proprietary player, (e.g., secure media player 1210), as described with reference to custom media device 310 of FIG. 3, thus enabling increased control of copyright restrictions and/or licensing agreements applicable to the media content. By invoking a secure media player 1210, UCM 1200 enables user experience of media content while providing protection against unauthorized presentation or reproduction of the media disposed on media storage device 999"). TS-17

In regard to *claim 14* and Risan discloses:

   *- an application space* (Risan, paragraph [0093], "It is noted that user database 450 can also include data for one or more media play lists that can be utilized to provide a media play list to client computer system 210. Subsequently, the user of client computer system 210 can utilize the received media play list in combination with the media player application operating on system 210 to transmit a delivery request for one or more desired pieces of media content from web server 250. It is noted that the delivery request contains the user key for validation purposes"); TS-18

   *- a media control mechanism operating in the application space, the media control mechanism controlling the operation of the system* (Risan, paragraph [0088], "FIG. 4 is an exemplary system 400 for implementing a copyright compliance mechanism in accordance with an embodiment of the present invention. Specifically, system 400 illustrates web server 250, content server 251, or a combination of web server 250 and content server 251 installing a copyright compliance mechanism (e.g., 300) in a client's computer system (e.g., 210) for

Application/Control Number: 11/116,689                                      Page 8
Art Unit: 2434

controlling media file distribution and controlling user access and interaction of copyrighted media files, in one embodiment of the present invention"); TS-19

*- a user interface adapted to provide input to the media control mechanism* (Risan, paragraph [0083], "client computer system 210 is configured with a custom media device driver 307 emulating custom media device 310, and which is system 210's default device driver for media file output. In one embodiment, an existing GUI (graphical user interface) can be utilized or a GUI can be provided"). TS-20

*- a protected space distinct from the application space* Risan, paragraph [0335] UCM 1800 further includes a secure player application 1810, a client communication application 1820, and a media storage container creator 1830. Media storage container creator 1830 is configured to allocate a portion of a memory unit coupled to the … software, and the like) are stored. It is noted that in one embodiment, media content that is stored in a protected media container file (not shown) is, in addition to other encryptions applicable to the instance of media, encrypted local to the computer system on which the protected media file container is disposed. TS-21

*- and a protected media pipeline operating in the protected space, the protected media pipeline coupled to the media control mechanism, the protected media pipeline adapted to access the media content, process the media content, and output the media content* Risan, paragraph [0149], "FIGS. 7A, 7B, and 7C, are a flowchart 700 of steps performed in accordance with one embodiment of the present invention for controlling end user interaction of delivered electronic media. Flowchart 700 includes processes of the present invention which, in some embodiments, are carried out by processors and electrical components under the control of computer readable and computer executable instructions"). TS-22

In regard to *claim 15*, claim 14 is incorporated and Risan discloses:

*- wherein the protected media pipeline operating in the protected space provides resistance to unauthorized access to the media content* (Risan, paragraph [0248] In an alternative embodiment, client computer system 210 has autorun turned off, wherein it is common for the user to be unable to play a media file unless a proprietary media player application is invoked. Activating the proprietary media player application can initiate an installation of those components of CCM 300 that are bypassed when autorun is not active"). TS-23

Application/Control Number: 11/116,689                                    Page 9
Art Unit: 2434

In regard to *claim 16*, claim 14 is incorporated and Risan discloses:

*- further comprising a digital rights management system communicating with the protected media pipeline* (Risan, paragraph [0317], "Accordingly, administrative node 1770 can, in one embodiment, be configured to provide management functionalities to a network, (e.g., network 1700 or network 800 of FIG. 8). Types of management functionalities that can be provided by administrative node 1770 can include, but is not limited to, network management, user management, encryption and decryption key management, authorization management, media management, transaction management, player application management, and cache management. Administrative node 1770 can also be implemented as a source node 1715 and/or as a media delivery point as described herein with reference to FIG. 8"). TS-24

In regard to *claim 17*, claim 14 is incorporated and Risan discloses:

*- wherein the media content is encrypted* (Risan, paragraph [0335], "Accordingly, media content is uniquely encrypted local to node 1705 and is uniquely encrypted local to node 1715. Additionally, in the context of the present invention, the term availed and/or availing refers to making available to a network, (e.g., 1700), an instance of media that may be stored in a protected media container file"). TS-25

In regard to *claim 18*, claim 14 is incorporated and Risan discloses:

*- wherein the system is embodied in an electronic apparatus* (Risan, paragraph [0337] In one embodiment, client communication application 1820 is configured to decrypt media content from an encryption local to a computer system on which application 1820 is operable"), where computer system is the "electronic apparatus" as claimed. TS-26

In regard to *claim 19*, claim 14 is incorporated and Risan discloses:

*- wherein the system is combined with a computer readable medium* (Risan, paragraph [0298], "The computer readable and computer executable instructions reside, for example, in data storage features such as computer usable volatile memory 104 and/or computer usable non-

Application/Control Number: 11/116,689                                    Page 10
Art Unit: 2434

volatile memory 103 of FIG. 1. However, the computer readable and computer executable
instructions may reside in any type of computer readable medium"). TS-27

In regard to *claim 20*, claim 1 is incorporated and Risan discloses:

- *wherein the output of the protected media pipeline couples to the input of another
protected media pipeline* (Risan, paragraph [0295], "Continuing with FIG. 15, subsequent to the
second encryptions 2351-P being decrypted, media content 2001-M, which is still encrypted with
a first encryption, (e.g., 1351-N, respectively), is output to secure media player 1210 via line
1573. Secure media player 1210 in conjunction with UCM 1200 communicates with server 250
and/or 251 and determines if computer system 210 and the user thereof, are authorized to
experience media content 2001-M. If system 210 and the user thereof are authorized to
experience media content 2001-M, secure media player 1210 commences to render the media
content for presentation via media hardware output device 1370"). TS-28

### Conclusion

5.      The prior art made of record and not relied upon is considered pertinent to applicant's
disclosure (see form "PTO-892 Notice of Reference Cited").

       Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Monjour Rahim whose telephone number is (571)270-3890. The examiner
can normally be reached on 5:30 AM -3:30 PM (Mo-Th).

       If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Kambiz Zand can be reached on (571)272-3811. The fax phone number for the
organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 11/116,689                                            Page 11
Art Unit: 2434

Information regarding the status of an application may be obtained from the Patent
Application Information Retrieval (PAIR) system.  Status information for published applications
may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished
applications is available through Private PAIR only.  For more information about the PAIR
system, see http://pair direct.uspto.gov. Should you have questions on access to the Private PAIR
system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would
like assistance from a USPTO Customer Service Representative or access to the automated
information system, call 800-786-9199 (in USA or CANADA) or 571-272-1000.


/Monjour Rahim/
Patent Examiner
Art Unit: 2434
Date: 10/07/2008
/Kambiz  Zand/

Supervisory Patent Examiner, Art Unit 2434